Gugenheim, Inc. v. Commissioner.
Gugenheim, Inc. v. Commissioner
Docket No. 111450.
United States Tax Court
1943 Tax Ct. Memo LEXIS 76; 2 T.C.M. (CCH) 948; T.C.M. (RIA) 43463; October 20, 1943
*76 Walter E. Barton, Esq., Investment Bldg., Washington, D.C., for the petitioner. John H. Pigg, Esq., for the respondent. KERN
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's income tax for the years 1938 and 1939 in the sums, respectively, of $455.40 and $186.73; and an overassessment in petitioner's income tax for the year 1940 in the sum of $301.35. Respondent also determined deficiencies in petitioner's personal holding company surtax for the years 1938, 1939 and 1940 in the amounts, respectively, of $2,515.53, $1,254.11, and $1,674.95, together with penalties for the three years involved aggregating $1,361.15. The issues presented herein are (1) whether petitioner during the taxable years was a personal holding company within the meaning of sections 402 and 403 of the Revenue Act of 1938; (2) if petitioner was such a personal holding company, whether its failure to file personal holding company returns for the taxable years was due to wilful neglect so as to subject it to the penalties provided by section 291 of the Revenue Act of 1938; (3) if petitioner was such a personal holding company, whether it is entitled to a dividends paid *77 credit against its personal holding company surtax in the amount of $900 for each of the years 1938 and 1939 which sum represented amounts paid by petitioner to one of its stockholders as salary and disallowed by respondent as excessive; and (4) whether respondent erred in disallowing certain deductions on account of losses claimed by petitioner for the years 1939 and 1940 by reason of certain securities becoming worthless during these years. In its petition petitioner sought a refund of income taxes paid for the year 1940 in the amount of $511.04. At the hearing herein respondent moved that this part of the petition be dismissed for lack of jurisdiction and the motion was granted. Findings of Fact The petitioner is a corporation organized in 1935 under the laws of the State of Kentucky, with its principal place of business at Marion, Kentucky. During the taxable years 1938, 1939 and 1940 the petitioner was engaged principally in the automobile finance business, consisting of the purchase of conditional automobile sales contracts from automobile dealers, making direct loans to individuals on their old automobiles or for the purpose of purchasing new ones, making loans to automobile *78 dealers on their inventories of new and used automobiles under so-called "floor plans." In addition to the automobile finance business, petitioner advanced money to individuals on the assignment of their salary checks, and also owned stock and bonds from which it realized dividends and interest, and also rented property from which it derived rentals. Petitioner's gross income for the taxable years 1938, 1939 and 1940 consisted of the following: Item
1938
1939
1940
(a) Interest
$ 4,585.46
$ 3,779.66
$ 4,043.59
(b) Rents
1,397.50
1,971.00
1,265.25
(c) Dividends
298.57
639.45
1,287.69
(d) Miscellaneous
2.92
10.37
15.00
(e) Return premiums on insurance
8.33
52.74
74.12
(f) Salvage on auto parts, etc.
90.90
57.03
89.83
(g) Cash Discount
16.72
21.97
26.48
(h) Profits on contracts purchased from auto dealers
4,848.21
4,586.82
5,795.76
(i) Discount on direct loans to purchasers
891.49
657.89
791.53
(j) Profit on salary assignments
54.00
176.90
219.25
(k) Service charge on floor plans
119.00
157.00
214.00
(l) Adjustments
0
0
0
Total Gross Income
$12,315.10
$12,183.99
$13,822.50
When purchasing an automobile from a dealer, the purchaser *79 customarily makes a down payment in cash and executes a conditional sales contract and an installment note for the deferred balance. The deferred balance is an amount in excess of the cash balance which the purchaser would be required to pay, if he were to pay the entire purchase price in cash at the time of the purchase. The amount of the deferred balance is determined by the automobile dealer and agreed to by the purchaser. The conditional sales contract provides that title to the automobile shall remain in the dealer until the deferred balance has been paid in full. Both the conditional sales contract and the installment note provide for the payment of stipulated cash installments on a monthly or quarterly basis over a period of time ranging from six to twenty-four months. The installments bear 6 percent interest from maturity until paid. The conditional sales contracts and the installment notes are transactions exclusively between automobile dealers and purchasers of automobiles in which petitioner does not participate. The principal portion of petitioner's business during 1938, 1939 and 1940 consisted of the purchase of conditional sales contracts and installment notes from *80 about six automobile dealers. These contracts and notes were assigned to the petitioner, sometimes with and sometimes without recourse, depending upon the credit of the purchaser and the risk involved. After assignment the purchasers made payments to the petitioner instead of the dealer, except occasionally, for their own convenience, the purchasers left the payments with the dealers, who, in turn, forwarded them to petitioner. The profits derived by petitioner on the purchase of conditional sales contracts during 1938, 1939 and 1940, represented the difference between the amounts paid by the purchasers on their respective conditional sales contracts and installment notes after assignment and the amount which petitioner paid the automobile dealers for such conditional sales contracts and installment notes. If the profit on a conditional sales contract and installment note did not appear to be large enough, petitioner refused to purchase the same from the automobile dealers. The amounts of petitioner's profits on conditional sales contracts purchased from automobile dealers are shown in item (h) of the schedule of petitioner's income set out above. Petitioner paid a salary of $1,200 *81 to Eva Gugenheim, one of its stockholders, during each of the years 1938 and 1939, of which the respondent allowed $300 and disallowed as excessive $900 for each of said years. In 1929 Samuel Gugenheim purchased three $1,000 leasehold first mortgage 6 1/4 percent sinking fund gold bonds of Hotel Pierre, Inc. out of the original issue of approximately $6,500,000, paying par, or $3,000 therefor, the numbers of these bonds being M 6187, M 6188 and M 6189. These bonds were secured by a leasehold on the land and a hotel to be built thereon at the corner of Fifth Avenue and 61st Street, New York City, as well as on the furniture and equipment to be purchased for the operation of the hotel. Hotel Pierre, Inc. from the beginning was unable to earn its fixed charges, and on or about July 15, 1931, a Bondholders' Deposit Agreement was entered into for the purpose of protecting the bondholders. This Bondholders' Deposit Agreement named the Straus National Bank & Trust Company of New York as depositary, and requested the bondholders to deposit their bonds, endorsed in blank to the Committee, whereupon each depositing bondholder became bound by the terms of the Bondholders' Deposit Agreement, *82 and was entitled to receive a certificate of deposit. Upon deposit of the bonds, title thereto became vested in the bondholders' committee. The committee was given power, among other things, to institute foreclosure proceedings, apply for receivership, and to perfect a plan of reorganization of Hotel Pierre, Inc. On or about September 19, 1931, a foreclosure suit was commenced in the Supreme Court of the State of New York by the trustee under the trust mortgage securing the first mortgage leasehold 6 1/4 percent sinking fund gold bonds for the benefit of the bondholders. On or about March 7, 1932 Hotel Pierre, Inc. was adjudicated a bankrupt in Bankruptcy No. 53575, District Court of the United States, Southern District of New York. On or about June 7, 1932, a judgment of foreclosure of the trust mortgage securing said first mortgage leasehold 6 1/4 percent sinking fund gold bonds of Hotel Pierre, Inc. was rendered in the Supreme Court of the State of New York, Special Term Part I, in the foreclosure proceedings. Some time prior to June 20, 1932, the bondholders' committee organized No. 1356 Corporation to facilitate its work, and assigned to this corporation all of the bonds which *83 had been deposited with the committee under the Bondholders' Agreement. On June 20, 1932 all the bonds, which had been deposited with the bondholders' committee, were transferred to the No. 1356 Corporation for its entire capital stock consisting of 200 shares without nominal or par value, this assignment being subject to the terms of the Bondholders' Deposit Agreement, and subject to the condition that the bonds would be returned to the bondholders, or to the committee at its request in the event of any plan of reorganization. Another provision of the assignment was that the No. 1356 Corporation would furnish the committee with funds and assume the committee's indebtedness in connection with any reorganization of Hotel Pierre, Inc. On or about July 19, 1932, No. 1356 Corporation, in Bankruptcy No. 53575, filed proof of claim in the amount of $5,464,000. Included among the bonds making up the claim of $5,464,000 of said corporation were the three bonds Nos. M 6187, M 6188 and M 6189, purchased by Samuel Gugenheim in 1929. On or about September 6, 1932, the bondholders' committee in the bankruptcy proceedings filed proof of claim of bonds of the face value of $440,000. On or about *84 June 1, 1932 the bondholders' committee submitted to the bondholders a proposed plan of reorganization of Hotel Pierre, Inc., which was agreed to by approximately 95.46 percent of all of said 6 1/4 percent bondholders, and on or about February 17, 1933, this reorganization plan was approved by the Supreme Court of New York County. In accordance with the reorganization plan, the participating bondholders of the first mortgage leasehold 6 1/4 percent sinking fund gold bonds of Hotel Pierre, Inc. were entitled to receive the following debentures and stock of 2 East 61st Street Corporation, the new corporation organized by the bondholders' committee, in exchange for each $1,000 such bond theretofore deposited by them: $400 principal amount of 5% income debentures 1 share of Class A stock 4 shares of Class B stock In addition to the foregoing debentures and stocks which the holders of the 6 1/4 percent sinking fund gold bonds were entitled to receive for their bonds, they were entitled, but not required, to make a cash subscription of $100 to 2 East 61st Street Corporation for each $1,000 6 1/4 percent sinking fund gold bond of Hotel Pierre, Inc. owned by them, in which event they *85 became entitled to receive for each $100 in cash subscribed: $100 principal amount of 6% income bonds. Each bondholder, who subscribed $100 in cash for such 6 percent income bonds, received without cost the following: $250 principal amount of 5% income debentures 1 share of Class A stock 4 shares of Class B stock On the reorganization of Hotel Pierre, Inc., Samuel Gugenheim received for his three $1,000 6 1/4 percent sinking fund gold bonds of Hotel Pierre, Inc. the following stocks and bonds of 2 East 61st Street Corporation: $1,200 of 5% income debentures 3 shares of Class A stock 12 shares of Class B stock Samuel Gugenheim also subscribed $300 in cash to 2 East 61st Street Corporation for which he received $300 of 6% income bonds. In addition to the 6 per cent income bonds. he received without cost the following: $750 of 5% income debentures 3 shares of Class A stock 12 shares of Class B stock Petitioner was incorporated under the laws of the State of Kentucky on November 11, 1935, with a capital stock of 100 shares without par value, the incorporators being Samuel Gugenheim, his father Sam Gugenheim, and his mother, Eva Gugenheim. These incorporators transferred *86 various assets, consisting of cash. properties, securities and notes, to petitioner for its capital stock. The balance sheet of petitioner as of November 1, 1935, which represented the opening entries of petitioner's books, is as follows: GUGENHEIM, INCORPORATED MARION, KENTUCKY
Statement of Assets and Liabilities as of November 1, 1935. Assets
Cash on Deposit - Farmers Bank & Trust Company
$ 6,524.93
Cash on Deposit - Indiana Bank & Trust Company
1,426.35
Notes Receivable - Finance Retail
44,080.23
Notes Receivable - Finance Wholesale
3,652.00
Notes Receivable - Loans and Discounts
42,819.35
Accounts Receivable - Insurance Accounts
297.51
Investments - County and City Warrants
2,301.40
Investments - Domestic Stocks
44,815.00
Investments - Domestic Bonds
62,800.00
Investments - Government and Municipal Bonds
4,880.00
Real Estate Holdings - Farms
15,000.00
Real Estate Holdings - City Property
19,530.22
Repossessed Autos
181.09
Furniture and Fixtures - Office
60.00
Automobile Equipment - Ford Coupe
600.00
Total Assets
$248,968.08
Liabilities
Samuel Gugenheim, Agent
$ 698.69
W. S. Lowry, Clerk
70.50
Mortgage Payable (W. B. Yandell)
8,000.00
Total Liabilities
$ 8,769.19
Deferred Income - Unearned Discount
4,939.19
Capital Stock - No Par Value - 100 shares
235,259.70
Total Liabilities
$248,968.08
*87 To record opening entry of Gugenheim, Incorporated, Marion, Kentucky, effective as of November 1, 1935. Company incorporated for 100 shares of No Par Value Stock for a period of 25 years. The stockholders valued the assets contributed by them to the petitioner for the purpose of arriving at a fair and equitable basis on which to issue the stock. This valuation consisted of appraising the real estate contributed at its then market value, the securities at cost and the notes at face amount. Sam Gugenheim received 15 shares of petitioner's capital stock; Eva Gugenheim received 25 shares of petitioner's capital stock; and Samuel Gugenheim received 60 shares of petitioner's capital stock. It was the intention of the parties that the proportion of the stock of petitioner received by each should approximately equal the proportion of the property transferred by each to petitioner. Among the assets transferred to petitioner by Samuel Gugenheim for its capital stock were the foregoing stocks, income bonds and income debentures of 2 East 61st Street Corporation, which he received at the time of the reorganization of Hotel Pierre, Inc. in 1933, which we have already described. The 6 percent *88 income bonds and the class A and class B stock of 2 East 61st Street Corporation became worthless in 1939, and the 5 percent income debentures of this corporation became worthless in 1940. The petitioner received a liquidating dividend of $88.35 in 1940 on the 5 percent income debentures. Petitioner did not file any personal holding company tax return for 1938, 1939 or 1940 because Samuel Gugenheim did not believe petitioner to be a personal holding company. The first time consideration was given to this matter was in 1941 when the revenue agent came to petitioner's office to check its income tax returns for those years. Petitioner was not a personal holding company during the taxable years. Opinion KERN, Judge: The principal question involved herein is whether petitioner is a personal holding company within the meaning of section 401 of the Revenue Act of 1938. A resolution of this question depends upon whether 80 per centum of petitioner's gross income for the taxable years was personal holding company income as defined in section 402 of that Act. The parties are in agreement that the totals of petitioner's gross income for the taxable years as set out in our findings are correct *89 and are also in agreement as to all of the items constituting petitioner's gross income for those years with the exception of those items set out in our findings as "profits on contracts purchased from auto dealers" and "discount on direct loans to purchasers." The evidence adduced at the hearing herein convinces us that the profits on conditional sales contracts purchased by petitioner from automobile dealers amounted during the taxable years to the respective amounts of $4,848.21, $4,586.82 and $5,795.76, which amounts are obviously over 20 percent of petitioner's gross income for the several years here involved. The income realized by petitioner as a result of the profits on the purchase of conditional sales contracts do not constitute personal holding company income within the meaning of the Revenue Act. . Therefore, petitioner was not a personal holding company during the years here in question. Respondent on brief recognizes that the cited case is determinative upon the question whether profits derived by the petitioner from the purchase of conditional sales contracts constitute personal holding company *90 income, but earnestly contend that the petitioner has not proved by competent evidence that the profits derived by it from the purchase of these contracts was in amounts constituting over 20 percent of petitioner's gross income for the taxable years. Respondent points out that the evidence on this question consisted of the introduction of ledger sheets from petitioner's books coupled with the oral testimony of petitioner's president, whereas he contends that the amount of these items should have been proved by the introduction of the original contracts. After a careful consideration of the entire record, and the facts and circumstances disclosed therein we are satisfied that the uncontradicted evidence introduced by the petitioner, although technically secondary in character, amply supports our findings upon this issue. Having concluded that petitioner was not a personal holding company during the taxable years it is unnecessary to consider the issues having to do with the imposition of penalties for failing to file personal holding company returns for the taxable years and having to do with whether petitioner is entitled to a dividends paid credit against his personal holding company *91 surtax on account of payments made to one of its stockholders as salary, the deduction of which was in part denied by respondent on account of the amount being partially excessive. The remaining issue is whether petitioner has the same basis for determining gain or loss with regard to certain securities which it acquired upon its incorporation from Samuel Gugenheim as Samuel Gugenheim had with regard to these securities, and the related question whether Samuel Gugenheim had the same basis with regard to these securities as he did with regard to securities which he originally purchased and for which the securities in question were exchanged as an incident to a reorganization of the corporation issuing the original securities. The securities in question became worthless during two of the taxable years. In calculating its deductible loss as a result thereof petitioner has used as its basis with regard to these securities the cost to Samuel Gugenheim of the original securities for which the securities in question were exchanged. Respondent in his explanation of adjustments attached to the notice of deficiency determined that the basis of petitioner with regard to the securities in question *92 were in amounts less than the cost to Samuel Gugenheim of the original securities described in our findings. In order for petitioner to use as its basis with regard to the securities in question the cost to Samuel Gugenheim of the original securities exchanged therefor, it is necessary for petitioner to show that the exchange by Samuel Gugenheim of the bonds of Hotel Piere, Inc. for the securities of 2 East 61st Street Corporation was a non-taxable transaction under the reorganization provisions of the statute, and further, that the exchange of the securities of 2 East 61st Street Corporation by Samuel Gugenheim for the common stock of petitioner whereby petitioner became the owner of the securities of 2 East 61st Street Corporation, was also a non-taxable transaction within the purview of the reorganization sections of the statute. With regard to the first exchange petitioner contends that the case of , requires a holding that the basis of the securities of 2 East 61st Street Corporation in the hands of Samuel Gugenheim is the cost to Samuel Gugenheim of the bonds of Hotel Pierre, Inc. We have *93 set out in our findings al of the material facts contained in the record bearing upon this issue. While we have no doubt concerning the insolvency of Hotel Pierre, Inc. with the consequent shift of the ownership of the equity in its property from the stockholders to the bondholders so that the doctrine of the Alabama Asphaltic Limestone Co. case, supra, would be applicable, the facts do not disclose what payment was made to the non-depositing bondholders of Hotel Pierre, Inc., or the source of any payment to them. Therefore, we are unable to say on the record that the rule of , does not also apply with the effect of making the transaction one in which gain or loss would be recognized. The respondent has determined the basis of the securities in question in the hands of petitioner to be other than that contended for by petitioner and therefore the burden of proving the nontaxable character of the transactions whereby the bonds of Hotel Pierre, Inc. owned by Samuel Gugenheim became the securities of 2 East 61st Street Corporation owned by petitioner. In the respect pointed out above we *94 feel that petitioner has not borne this burden. Passing to the transaction wherein Samuel Gugenheim exchanged the securities of 2 East 61st Street Corporation for the common stock of petitioner, we are again of the opinion that petitioner has not shown that the transaction comes within the reorganization provisions of the statute. Petitioner relies upon section 112 (b) (5) of the Revenue Act of 1934. [1] This section is applicable only if the amount of the stock of petitioner issued in exchange for property transferred to it by its three incorporators is substantially in proportion to the interest of each incorporator in the property owned by them prior to the exchange. In the instant case we have before us no evidence as to the value of the property transferred to petitioner by Samuel Gugenheim and by his mother and his father. There is evidence to the effect that the three Gugenheims made some valuation of the property transferred to petitioner by each of them and that they themselves were satisfied that the stock of petitioner received by them was substantially in proportion to the interest of each in the property transferred prior to the exchange. However, there is nothing in *95 the record to satisfy us that this is true. The evidence with regard to the method of valuation used by the Gugenheims does not allay our doubts on this matter. Samuel Gugenheim, petitioner's sole witness, testified that he and his father and mother appraised the real estate transferred to petitioner "according to real estate values at that time" and then testified "we knew what the bonds had cost, knew what the notes totaled", thus indicating that the bonds and presumably other securities transferred to petitioner were valued at cost and the notes were valued at their face amount. Since we do not know what assets were transferred by each of the three Gugenheims to petitioner, or their value, we can not find on the record before us that the stock of petitioner received by each of them was substantially in proportion to his interest in the property exchanged therefor. *96 Upon this issue we decide in favor of the respondent. Decision will be entered under Rule 50. Footnotes
1. (b) EXCHANGES SOLELY IN KIND. - (5) Transfer to Corporation Controlled by Transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons, solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.↩